## UNITED STATES v. CIPULLO.

### No. 65, Docket 21094.

United States Court of Appeals
Second Circuit.

Oct. 28, 1948.

John F. X. McGohey, U. S. Atty., of New York City (Frederick H. Block, William M. Regan and Saul S. Sharison, Asst. U. S. Attys., all of New York City, of counsel), for plaintiff-appellee.

Abraham Lebenkoff, of New York City, John M. Smith, Jr., and Welsh, Watson & Smith, all of Philadelphia, Pa., for defendant-appellant.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

[1] 2 Cir., 162 F.2d 136.
[2] 332 U.S. 825, 68 S.Ct. 166.
[3] 332 U.S. 845, 68 S.Ct. 266.
[4] 148 U.S. 262, 13 S.Ct. 590, 37 L.Ed. 443.
[5] 156 U.S. 330, 15 S.Ct. 358, 39 L.Ed. 441.
[6] 2 Cir., 22 F.2d 296.
[7] 2 Cir., 103 F.2d 771.

AUGUSTUS N. HAND, Circuit Judge:

The appellant Cipullo seeks reversal of his conviction under Counts 1 and 2 of the indictment solely on the ground of errors said to have been committed by the trial judge. There were three such alleged errors:

(1) The admission of a photostatic copy of an affidavit purporting to have been signed by Cipullo's employer Eisner. This affidavit, sworn to November 30, 1944, stated that one Anthony Martino was employed as a mechanic in repairing gasoline engines, namely, welding machines, trucks, etc., for the Elektrowelding Company, a concern engaged in "welding on convoy ships while loading at piers on Delaware River." It was introduced by the Government to answer Cipullo's testimony that he and Martino in November, 1944, were no longer friends and that accordingly neither was likely to have forged an affidavit on the other's behalf. There was evidence that the affidavit purporting to be signed by Eisner was actually signed by Cipullo to support Martino's claim of deferment from military service. It is apparent from specimens of the handwriting of Cipullo, who wrote the name "Eisner" before the trial court many times, that the handwriting reproduced by the photostat Exhibit 23 was a fair copy of the original affidavit and tended to show that Martino and Cipullo were not unfriendly in 1944 and that the latter might well have forged the name of Eisner for the benefit of Martino. It also was introduced to support the claim that another affidavit forged by Martino in the name of Eisner in support of Cipullo's claim to exemption was a not unnatural exchange of courtesies between these two men, each of whom was trying to support a false claim of exemption from military service.

(2) The next error relied on was the failure of the trial judge to warn the jury sufficiently against believing the testimony of Martino that Cipullo ceased to be engaged in welding prior to and during November, 1944, and that Martino had admitted in a proceeding in Philadelphia that he had testified falsely.

(3) The final error complained of consisted of cross-examination of Cipullo by the Government, attacking his credibility. The attack was based upon two convictions in the United States District Court for the Eastern District of Pennsylvania under indictments for making fraudulent claims against the Government. Each case was on appeal at the time of the trial of the present action. The trial judge allowed the cross-examination, and said to the jury in his charge: "On cross-examination he was asked about certain convictions in other cases. The jurors may consider those convictions in determining the credibility of the witness's testimony in the case. It does not mean that a man who has been convicted in another case cannot tell the truth. Of course not; but the jurors may weigh that fact in determining whether or not he is a credible witness." Each conviction relied on to attack credibility was afterwards reversed by the Court of Appeals for the Third Circuit [United States v. Ward, 168 F.2d 226, and United States v. Cipullo, 169 F.2d 460] which granted new trials, but on the argument before this court, defendant's counsel admitted that since the reversals Cipullo had pleaded guilty in each case.

In respect to items (1) and (2) supra, there was no error on the part of the trial judge. Not only have properly authenticated photostats been recognized by the courts as sufficient proof of original documents, but in the present case, on a motion to set aside the verdict, after a delay in obtaining it, which very likely served as a justification for producing secondary evidence, the original affidavit forged by Cipullo on November 30th was produced. An examination of this original amply authenticated the photostat and the specimens of Cipullo's writing of the name "Eisner" establish the forgery. The opinion of Mr. Justice Sutherland in United States v. Manton, 2 Cir., 107 F.2d 834, 845, would seem to justify the use of the photostat at the trial, and the subsequent requirement of Judge Leibell that the original be produced, and examination of it nullified any reasonable claim that the defendant was prejudiced by submitting the photostat to the jury.

There was clearly no error in the charge of the judge as to the weight of the

testimony of Martino because he was an accomplice. In the federal courts a jury may credit the uncorroborated testimony of an accomplice if after careful scrutiny they believe it, but in the present case Martino's testimony that he had forged the name of Eisner for the benefit of Cipullo was supported by a handwriting expert. Judge Leibell's charge in respect to the weight to be given to Martino's testimony is appended in the margin,[1] and was plainly adequate. There was no request that the judge charge specifically that Martino admitted that he had been guilty of false swearing in another proceeding. That admission was before the jury, and the judge carefully instructed them that they should scrutinize the testimony of the accomplice and give it only such weight as it was entitled to.

■ In respect to item (3) involving the propriety of the allowance of cross-examination as to the convictions in the Eastern District of Pennsylvania to attack the credibility of Cipullo, we can see no prejudice to the latter's rights. Although these convictions were reversed, his counsel admitted that he had since pleaded guilty to the charges, instead of availing himself of the new trials granted by the Court of Appeals for the Third Circuit. Consequently, he stands as found guilty in those prosecutions and any objection which might have been urged to using convictions that existed at the time of the trial in the court below as a basis for attacking his credibility would seem to rest on the merest technicality and to have no basis in the administration of essential justice. If we should grant a new trial, an attack upon Cipullo's credibility based upon his pleas of guilty could be made. Therefore, we need not consider the problem which would face us if the reversals of the convictions had not been followed by pleas of guilty.

For the foregoing reasons, the judgment is affirmed.

[1] "What about the testimony of an accomplice? The testimony of an accomplice in connecting others with a crime charged should be viewed by the jury with a certain degree of caution and weighed carefully. It is to be preferred that there be some corroboration of a substantial part of the accomplice's testimony. The extent to which there has been such corroboration, if any, is for the jury to determine. However, corroboration is not absolutely necessary, and a defendant may, under our jury system, be convicted on the uncorroborated testimony of an accomplice if the jury believes the testimony of the accomplice and if it establishes in the minds of the jury the guilt of the defendant beyond a reasonable doubt."