Sidney SMITH, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15421.

United States Court of Appeals
Fifth Circuit.

June 30, 1955.

Rehearing Denied Aug. 12, 1955.

Bernard A. Golding, Houston, Tex., for appellant.

Carlos G. Watson, Jr., Asst. U. S. Atty., Malcolm R. Wilkey, U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, JONES, Circuit Judge, and WRIGHT, District Judge.

WRIGHT, District Judge.

This appeal concerns the sordid story of a city policeman who wanted to run with the hare and play with the hounds. The hounds caught him. He was convicted of conspiring[1] with two incorrigible criminals to violate the Internal Revenue laws relating to narcotic drugs. In this appeal he contends that it was error to permit his co-conspirators to testify against him, that it was error to admit evidence of unrelated offenses for which he was not on trial, and that the evidence as a whole fails to support the charge against him.

The indictment charged that the appellant, with one Carl E. Lawder and one Charles Aarons, named but not indicted, entered into a conspiracy to violate various criminal statutes[2] by obtaining prescriptions for narcotic drugs from physicians under false pretenses and distributing the narcotics so obtained to the conspirators for their personal use. Lawder and Aarons, being drug addicts, used the narcotics to satisfy their addiction, while the appellant, Smith, not a drug addict, used his to purchase favors from two women of ill fame, who were addicted to the use of narcotic drugs, as well as to pay his yard boy, also a drug addict.

The evidence against Smith consisted of testimony of his co-conspirators, the two women of ill repute, the yard boy, and the owner of the house in which the appellant is alleged to have conducted his affair with one of the women. All of these witnesses are criminals of the most unsavory sort. In addition to these witnesses, the Government used the various doctors who supplied the prescriptions and the druggists who filled the prescriptions, together with certain incidental witnesses, to corroborate the testimony of the co-conspirators, Lawder and Aarons.

The record shows that on June 14, 1953 the appellant, Sidney Smith, then a policeman in the burglary and theft division of the Houston Police Department, stopped Lawder and Aarons, both known drug addicts and ex-convicts, as they were driving down a street in Houston, searched the car and found fifty dilaudid tablets which had been illegally obtained by Lawder by means of a prescription. Smith seized the tablets but did not arrest Lawder and Aarons. That afternoon Lawder and Aarons called on Smith and asked him to return ten of the fifty tablets, which Smith did. At that time Smith made it clear to Lawder and Aarons that unless they cooperated with him in obtaining dilaudid tablets, he would prefer charges against them based on the forty tablets which he retained. Smith then asked Lawder to obtain for him 200 dilaudid tablets. Lawder did so by obtaining a prescription therefor under false pretenses, representing that he was a victim of cancer. From this date, June 14, 1953, until the end of the conspiracy, August 17, 1953, Lawder purchased hundreds of tablets of dilaudid on prescriptions illegally obtained by him under false pretenses. On the various occasions when the tablets were ob-

---

1. 18 U.S.C. § 371.

2. 26 U.S.C. § 2554(a), 26 U.S.C. § 2553, 18 U.S.C. § 494, 26 U.S.C. § 2554.

tained, Smith would drive Lawder to a doctor's office where he would wait in the car until Lawder returned. He would then drive Lawder to a pharmacy and again wait in the car until the tablets were obtained. The money to purchase the drugs was supplied by Smith or Aarons. The drugs were distributed to the three conspirators and used by them as above indicated.

Smith took the stand in his own defense. He admitted his association with the criminal witnesses in the case. He explained that association, however, by suggesting that in his work as a policeman, it was necessary to use informants and the informants were usually drug addicts or confirmed criminals of one kind or another. He denied any participation in, or knowledge of, the conspiracy to obtain narcotic drugs testified to by Lawder and Aarons. He denied also illicit relations with Marguerite Fredericks and Opal Jackson although he admitted knowing them and being with them on various occasions. He also admitted driving to San Antonio with Lawder in a police car.

■ The Government evidence, if it is to be credited, clearly establishes beyond peradventure of doubt the guilt of the defendant as charged. Realizing that this is so, appellant spends most of his brief berating the Government's witnesses, calling them what they obviously are, and suggesting that they are not to be believed. This argument should have been made, and we presume it was, to the trial court which, sitting without a jury, found the defendant guilty. This court does not determine the credibility of witnesses or the weight of their evidence. Caminetti v. United States, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442. The trial judge here, an experienced jurist, learned in the criminal law, assayed the credibility of these witnesses and weighed their evidence. Based on that determination, he convicted the defendant and that con-

viction cannot be set aside by this court unless error of law, as charged by appellant, appears in allowing the co-conspirators to testify or in admitting evidence of unrelated offenses for which the appellant was not then on trial.

■ Appellant, citing Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196, and Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790, apparently contends that a conspirator cannot testify against his co-conspirator, at least as to matters relating to the conspiracy. On just what basis this novel theory rests is difficult to divine. Certainly Fiswick and Krulewitch do not support it. Those cases merely restate the general principles of proof applicable to conspiracy. They stand for the principle that statements made by a conspirator during the conspiracy, in furtherance of the conspiracy, are admissible in evidence against all conspirators. Statements or confessions of one conspirator made after the conspiracy is ended are not admissible evidence against the other conspirators.[3] But this is not to say that a conspirator is incompetent to take the stand during the trial of the conspiracy charges and testify as to the activities of the various defendants on trial during the conspiracy. See On Lee v. United States, 343 U.S. 747, 757, 72 S.Ct. 967, 96 L.Ed. 1270. Perhaps appellant is confusing this principle with the principle that the testimony of a co-conspirator must be received with caution and should be corroborated, as here, by other evidence. Caminetti v. United States, supra; Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861; Colt v. United States, 5 Cir., 160 F.2d 650.

■ Appellant's final point is it was error to admit "evidence, insinuations and innuendos of unrelated offenses for which Appellant was not on trial and which only tended to prejudice him."

3. See also Brown v. United States, 150 U.S. 93, 14 S.Ct. 37, 37 L.Ed. 1010; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Mora v. United States, 5 Cir., 190 F.2d 749.

He complains that evidence of the purchase of potassium cyanide by Lawder during the trip which appellant and Lawder made to San Antonio is not only irrelevant but has ominous overtones prejudicial to him. The evidence concerning the purchase of potassium cyanide was introduced into the record through cross-examination of Lawder by appellant's counsel. It is true that on redirect the Government produced the potassium cyanide actually purchased. Since appellant had already opened the subject by having Lawder testify that he purchased the potassium cyanide, he obviously has no cause to complain because the Government produced the actual purchase.

Appellant's complaint that testimony concerning his illicit relations with Marguerite Fredericks should not have been admitted is also without merit. Marguerite Fredericks' testimony showed that she received from Smith, in return for her affection, the dilaudid purchased by Lawder. Such evidence supported the Government's charge that Lawder, Aarons and Smith were illegally obtaining narcotic drugs.

Appellant also protests against the admission in evidence of notes in Smith's handwriting which appeared to be plans for a robbery to be performed by Smith and Lawder. These notes were introduced in evidence by the Government after Smith had testified that while he knew Lawder, the association was by no means intimate. These notes tended to rebut this testimony. If this case had been tried to a jury, the court probably would have excluded this evidence on the ground of undue prejudice. Since the case was tried to the court, the prejudicial nature of the evidence becomes less apparent. In any event, appellant did not properly object to the admission of the evidence and, consequently, this issue presents nothing for review. On Lee v. United States, supra; Stewart v. United States, 5 Cir., 131 F.2d 624; Rule 51, Fed.Rules Crim.Proc., 18 U.S.C.A.; Wigmore on Evidence, § 18(C) (1).

Affirmed.