Joseph Francis NEWMAN, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17467.

United States Court of Appeals
Eighth Circuit.

May 20, 1964.

Rehearing Denied June 26, 1964.

Eugene A. Matthews, Jr., of Wootton, Land & Matthews, Hot Springs, Ark., made argument for appellant and filed typewritten brief.

Charles M. Conway, U. S. Atty., Fort Smith, Ark.; made argument for appellee and filed printed brief.

Before VAN OOSTERHOUT, RIDGE and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

Defendant, Joseph Francis Newman, has appealed a jury verdict finding him guilty of six counts of an indictment in which he was charged with one count of conspiring with eight, named, co-defendants, as proscribed by 18 U.S.C.A. § 371, to violate the federal automobile theft statutes, 18 U.S.C.A. §§ 2312 and 2313, and five counts alleging separate, substantive offenses under § 2312 for stealing and transporting automobiles in interstate commerce.[1]

Newman received a sentence of three years imprisonment on the conspiracy charge and two years on each of the remaining five substantive counts ordered to run concurrently inter se, but consecutively with the three year sentence for conspiracy, making a total sentence of five years.

Prior to and during the course of trial, six co-defendants being tried jointly as co-conspirators with appellant pleaded guilty, while another defendant was granted a separate trial. Thus, of the original eight defendants, only appellant Newman and defendant Cason were convicted in the instant proceeding below,

and the latter has abandoned appeal of his conviction.

The alleged conspiracy involved an interstate, automobile, theft ring headquartered in Hot Springs, Arkansas. Its *modus operandi* followed a pattern. In most instances the conspirators operating in Arkansas would obtain a wrecked automobile from a salvage company in Hot Springs, procuring the vehicle's title papers from an insurance company or from the original owner. The Hot Springs organization then instructed one of its confederates in the Akron, Ohio area to steal a vehicle identical with the make, model, and color of the procured wrecked vehicle. The stolen vehicle would be driven by a conspirator from Akron to Hot Springs where, after transferring the serial number plate of the wrecked vehicle to the stolen vehicle, the latter was sold by one of the defendants who operated a used car lot to a legitimate dealer in the area by what appeared to be a bona fide transfer of title. The jury found that appellant had participated in the overall conspiracy and had transported vehicles stolen in Akron, Ohio on five separate occasions to Hot Springs, Arkansas.

Appellant relies on three alleged instances of prejudicial error occurring during the trial below as bases for reversal of his conviction. Firstly, he maintains that the district judge erroneously instructed the jury on the conspiracy charge by prohibiting them from considering acts done or statements made by any of the alleged conspirators subsequent to April 10, 1963, the date the indictment was returned, as evidence of appellant's participation in the alleged conspiracy. Appellant argues that the termination of the conspiracy was a factual question for the jury's determina-

1. Section 2312: "Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Section 2313: "Whoever receives, conceals, stores, barters, sells, or disposes

of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

tion which the court's instruction preempted from their consideration by fixing its termination coextensive with return of the indictment. The first paragraph of the challenged instruction on conspiracy merely paraphrases the well settled rule that declarations of a co-conspirator are admissible as substantive evidence of guilt of an alleged conspirator when made in furtherance of an existing conspiracy. Logan v. United States, 144 U.S. 263, 309, 12 S.Ct. 617, 36 L.Ed. 429 (1892); Lutwak v. United States, 344 U.S. 604, 617–618, 73 S.Ct. 481, 97 L.Ed. 593 (1953). Appellant's argument goes to the last paragraph of the instruction which in effect precludes the jury from considering as evidence of a conspiracy against appellant any statements made by an accomplice subsequent to April 10, 1963, the date the indictment was returned.

■ We do not believe the court's instruction on conspiracy led the jury into error. Contrary to appellant's contention here and the government's allegation in its original indictment, the instruction did not direct the jury that they must find the conspiracy ended upon return of the indictment. The instruction simply set a time limit beyond which the jury could not find the conspiracy existed insofar as it related to the admissibility of any acts done or statements made by alleged co-conspirators in proof of defendant's guilt. Theoretically, the jury could have, within the bounds of the instruction, found that the conspiracy in fact ended prior to return of the indictment and before the statements, giving vent to the alleged prejudice under the challenged instruction, were made to the Federal Bureau of Investigation on February 14 and 15, 1963 by the original co-defendants Woody and Imhoff, who also testified for the government at length implicating defendant Newman in the conspiracy. The evidence indicated that the conspiracy existed subsequent to February 7, 1963, for it was stipulated during trial that one of the illegally transported automobiles was stolen in Ohio on that date. This car was not re-covered until sometime thereafter from a parking lot in Hot Springs. Nevertheless, assuming arguendo, the conspiracy in fact terminated upon the arrest of defendant Imhoff on February 14 before either his statement or that of Woody was made to the F.B.I., their statements were used only for the limited purposes of impeaching the credibility of these two government witnesses by the defense attorney on his cross-examination made possible by the Jencks Act (18 U.S.C.A. § 3500) or by the government on redirect examination under the doctrine of "verbal completeness". Therefore, any error in the court's instruction on conspiracy which may have failed to fully explain the jury's prerogative to determine from the evidence the date the conspiracy ended was cured by the restricted use of the statements, not as evidence of defendant's involvement in the alleged conspiracy, but only to fairly test the credibility of the affiants by putting before the jury a complete picture of their prior consistent as well as inconsistent remarks. Speaking through the late Judge Sanborn, this Court held in Affronti v. United States, 145 F.2d 3, 7 (8th Cir. 1944):

"(T)hat if some portions of a statement made by a witness are used on cross-examination to impeach him, other portions of the statement which are relevant to the subject matter about which he was cross-examined may be introduced in evidence to meet the force of the impeachment."

We are not alone in our belief that the government is entitled to use on redirect examination other portions of its witnesses' prior statements first referred to by the defense upon cross-examination in order to place in context the witness' prior remarks under the rule of "verbal completeness". See United States v. Agueci, 310 F.2d 817 (2nd Cir. 1962), cert. denied 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); United States v. Lev, 276 F.2d 605 (2nd Cir. 1960), cert. denied 363 U.S. 812, 80 S.Ct. 1248, 4 L. Ed.2d 1153 (1960); Short v. United

States, 271 F.2d 73 (9th Cir. 1959). Conceding their inadmissibility for any purpose, we would still be hard pressed to reverse on the basis the impact of their erroneous consideration by the jury as a result of the incomplete instruction on conspiracy prejudiced the defendant, in view of the respectable authority establishing the admissibility of these two witnesses' direct testimony concerning the operation of the conspiracy, its members, and the key role the defendant played in its unlawful execution. E. g., Smith v. United States, 224 F.2d 58, 60 (5th Cir. 1955), cert. denied 350 U.S. 885, 76 S.Ct. 138, 100 L.Ed. 780 (1955).

In short, the conspiracy instruction did not confuse the jury in their consideration of the statements made by an accomplice as possible substantive evidence of appellant's guilt. The statements were properly admitted bearing on the limited question of credibility, and, therefore, whether the conspiracy instruction forewarned the jury their use as substantive evidence of appellant's guilt was proper only if given before a finding the conspiracy was still in existence is unimportant. We have canvassed the court's entire charge and note the jury was admonished membership in a conspiracy must be established by evidence of the defendant's own conduct, what he himself did or said—not what others did or said, that a witness' testimony might be discredited or impeached by proof of conviction for a felony and that testimony of an accomplice should be considered with care and caution. The charge in its entirety is predicated upon an accurate appraisal of the applicable law, and is free of prejudicial error. See e. g., Anderson v. United States, 262 F.2d 764, 773 (8th Cir. 1959), cert. denied 360 U.S. 929, 79 S.Ct. 1446, 3 L.Ed.2d 1543 (1959), reh. denied 361 U.S. 855, 80 S.Ct. 43, 4 L.Ed.2d 94 (1959).

Corollary to argument that the court's instruction on conspiracy erroneously permitted the jury to consider the questioned statements as substantive evidence of appellant's guilt, appellant also maintains that if the statements were utilized only for credibility purposes, the court erred in failing to instruct the jury to this effect. We recognize that a cautionary instruction limiting consideration of the statements to issues of credibility would have been proper under the circumstances. However, this is not to say, that failure to so instruct constituted prejudicial error. We recently reaffirmed this Circuit's understanding of Rules 30 and 52, Fed.R.Crim.P., in finding that absent a request for a specific charge, a reversal is justified only if the failure to instruct represents "a basic and highly prejudicial error". Franano v. United States, 310 F.2d 533, 539 (8th Cir. 1962), cert. denied 373 U.S. 940, 83 S.Ct. 1545, 10 L.Ed.2d 694 (1963). Accord: Cratty v. United States, 82 U.S.App.D.C. 236, 163 F.2d 844 (1947); United States v. Passero, 290 F.2d 238 (2nd Cir. 1961), cert. denied 368 U.S. 819, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); Sartain v. United States, 303 F.2d 859 (9th Cir. 1962), cert. denied 371 U.S. 894, 83 S.Ct. 194, 9 L.Ed.2d 127 (1962); Short v. United States, supra, 271 F.2d at 78. The content of the statements is only cumulative insofar as contributing to the truth of the charges supportable by an abundance of other evidence demanding conviction. It is equally significant that appellant's defense counsel came into possession of the disputed statements several days before their use by the government upon redirect examination of the witnesses. Defense counsel was, therefore, well acquainted with all references in the statements to appellant's complicity in the charged crimes, but he not only deemed it unnecessary or unwise as a matter of trial tactics to object to the government's reading into the record the statements on redirect examination, but he also failed to request an excise of the references to appellant or solicit from the court a cautionary instruction limiting their consideration by the jury to the credibility of the affiants. We cannot speculate as to defense counsel's motivations; however he may well have de-

sired these statements' admission into evidence to further emphasize the contradictions contained therein and thus bolster his efforts at impeachment. Notwithstanding the defense counsel's acquiescence in their admission, the district court noted an exception thereto in defendant's behalf. It is under these circumstances that we believe the language of the court in United States v. Five Cases of Figlia Mia Brand of Oil, 179 F.2d 519, 523 (2nd Cir. 1950), cert. denied 339 U.S. 963, 70 S.Ct. 997, 94 L. Ed. 1372 (1950), justifies our finding that the district court's failure to give the cautionary instruction on credibility did not deprive defendant of any substantial rights:

> "The victim of alleged prejudice cannot be allowed to nurse it along to the point of reversibility and then take advantage of a situation which by his silence he has helped to create."

Lastly, appellant submits that the district court committed reversible error in denying his motion for mistrial based upon his cross-examination by the government's attorney with respect to a prior felony conviction which is pending appeal in a state court. A split of authorities has evolved among federal and state jurisdictions concerning the admissibility for the purpose of impeaching a witness' credibility evidence of his prior criminal conviction while pending appeal. Within the federal camp, the District of Columbia Circuit, construing a local evidentiary statute formulated on the rule of a witness' competency at common law, has repeatedly held:

> "[I]t seems to us wholly illogical and unfair to permit a defendant to be interrogated about a previous conviction from which an appeal is pending. If the judgment of conviction is later reversed, the defendant has suffered, unjustly and irreparably, the prejudice, if any, caused by the disclosure of the former conviction."

Campbell v. United States, 85 U.S.App. D.C. 133, 176 F.2d 45, 47 (1949); see also Beasley v. United States, 94 U.S. App.D.C. 406, 218 F.2d 366 (1954), cert. denied 349 U.S. 907, 75 S.Ct. 584, 99 L.Ed. 1243 (1955); Fenwick v. United States, 102 U.S.App.D.C. 212, 252 F.2d 124 (1958).

The Seventh and Ninth Circuits have adopted a contrary position favoring admission generally of such evidence on grounds proof of a conviction until reversed is a verity permissibly to be considered by the trier of facts as destructive of the witness' credibility. United States v. Empire Packing Co., 174 F.2d 16 (7th Cir. 1949), cert. denied 337 U.S. 959, 69 S.Ct. 1534, 93 L.Ed. 1758 (1949); Bloch v. United States, 226 F.2d 185 (9th Cir. 1955), cert. denied 350 U.S. 948, 76 S.Ct. 323, 100 L.Ed. 826 (1956), and 238 F.2d 631 (9th Cir. 1956), cert. denied 353 U.S. 959, 77 S.Ct. 868, 1 L. Ed.2d 910 (1957). Variations of the basic question have confronted the Second Circuit as well. In one instance, the court reasoned that cross-examination of an accused disclosing an earlier conviction pending appeal at the time of trial produced no reversible error when later affirmed before review of the case at bar. United States v. Owens, 271 F.2d 425 (2nd Cir. 1959), cert. denied 365 U.S. 874, 81 S.Ct. 910, 5 L.Ed.2d 863 (1961). See the dissenting opinion in Fenwick v. United States, supra, 252 F.2d at page 128, wherein Judge Bastian opined that remand in such an instance would provoke a meaningless retrial at which the heretofore taboo testimony could now be introduced. In yet another Second Circuit case, the pending conviction was reversed following cross-examination in a subsequent case revealing its imperfected status, but the issue of prejudicial effect when reviewed upon appeal of the second conviction was rendered moot by the witness' plea of guilty to the earlier conviction in deference to standing a second trial. United States v. Cipullo, 170 F.2d 311 (2nd Cir. 1948), cert. denied 336 U.S. 946, 69 S.Ct. 805, 93 L.Ed. 1103 (1949). A majority of the state jurisdictions supports the trend in federal forums approving admission of ev-

idence of a pending conviction until reversed in attack upon a witness' credibility.

■ Distinctive facts in the case at bar obviate necessity for deciding the general question of admissibility on cross-examination of a prior conviction then pending on appeal. We have no difficulty in affirming pro hac vice the instant judgment under the circumstances surrounding the government's inquiry of appellant's prior conviction challenged here. Testifying in his own behalf, appellant, at request of counsel, surveyed his past criminal record from the time he was a youth until the present. Appellant testified that as a youth his first conviction for a felony was for taking an automobile without the owner's permission. He stated that the only other felony for which he had been convicted occurred in the early 1940's when he was arrested for burglarizing a cash register from a restaurant but following conviction he was paroled before serving his entire sentence. Prior to cross-examination by the government's attorney, defense counsel asked him if he had ever been arrested, charged with any other crime, either misdemeanor or felony, other than those mentioned and the matter for which he was presently being tried. Appellant answered negatively. On cross-examination by the government, appellant admitted to yet another felony conviction of burglary and grand larceny in Cuyahoga Falls, Ohio in 1939 for which he received a sentence of fifteen years imprisonment. Refreshing appellant's memory further, the government's attorney interrogated him as to whether or not he had been convicted on April 26, 1963 in a Tennessee state court for the unlawful possession of certain itemized burglar tools. Appellant admitted to this heretofore undisclosed conviction but insisted it was pending appeal. It is the evidence of this conviction which has fomented the instant appeal based on the government's improper cross-examination which assertedly prejudiced defendant in the eyes of the jury. The obvious purpose of appellant's direct testimony prior to his admission on cross-examination of other convictions was to leave the impression with the jury that he had only a minor brush with the law when a youth and his last major conviction occurred more than twenty years previous, for which he had paid his debt to society and had thereafter turned over a new leaf. The government's cross-examination ferreted an admission of yet another felony conviction in addition to the appealed conviction for possession of burglary tools. Furthermore, the subject of appellant's previous criminal record was first introduced by his own counsel whose queries were not limited to conviction of felony but rather couched in broad terms such as defendant's "prior arrests", "charges" and "misdemeanor convictions". In so doing, defense counsel opened appellant's entire criminal record for the jury's consideration with respect to appellant's credibility. We think the jury properly was entitled to all information pertinent thereto, regardless of the fact that his latest conviction has been appealed, rather than permit the jury to labor under the illusion that for the past twenty years appellant, seemingly having learned the error of his ways, had become an honest, law abiding citizen.

A thorough study of the entire record of proceedings in the instant case compels our conclusion that appellant was afforded all his constitutional safeguards throughout his fair, although not necessarily perfect, day in court. The judgment of conviction is affirmed.

We wish to express our appreciation to court-appointed counsel, Richard W. Hobbs, who defended in the trial below, and Eugene A. Matthews, Jr., who conducted the appeal, for their more than adequate and laudable representation.