Barbara **SELLARS**, Administratrix of the Estate of James Walter Sellars, Deceased, Appellant,

v.

**LOGAN TOWING COMPANY, Inc.,**
Appellee.

No. 19294.

United States Court of Appeals
Eighth Circuit.

Aug. 1, 1969.

\*    \*    \*    \*    \*

macher, New Orleans, La., for appellee, Nathan A. Cobb, of Richards, Montgomery, Cobb & Bassford, Minneapolis, Minn., on the brief.

Before BLACKMUN, MEHAFFY and HEANEY, Circuit Judges.

MEHAFFY, Circuit Judge.

This suit was brought by the plaintiff, Barbara Sellars, as Administratrix of the estate of James Walter Sellars, deceased, under the Jones Act, 46 U.S. C.A. § 688, and the General Maritime Law for damages accruing to the survivors of James Walter Sellers who, while engaged in his duties as a deckhand aboard the M/V HILMAN LOGAN, a towing vessel owned and operated by defendant, Logan Towing Company, Inc., lost his life by drowning. The case was tried to a jury resulting in a verdict and judgment for defendant.

The assignments of error upon appeal relate to the trial court's instructions and the admission of certain evidence. We affirm the judgment.

Briefly summarized, the accident occurred during the course of a "facing up" operation of the towboat M/V HILMAN LOGAN and a total of eight barges moored to the bank of the Mississippi River near St. Paul, Minnesota. "Facing up" means the securing of the towboat to the stern barge in a tow. In this instance, the stern barge of the tow was Barge J-10. This operation was done by means of four steel cables, each leading from a winch on the forward deck of the towboat to a timberhead or bitt on the back of the stern barge and then back to a button or fastening on the bow of the towboat. At the time of the accident, the HILMAN LOGAN was positioned near the bank with her bow flush with the stern of Barge J-10. The towboat and barges were stationary and secured to the bank.

Robert G. Hebert of Kierr & Gainsburgh, New Orleans, La., for appellant, Fountain D. Dawson, Greenville, Miss., and Oppenheimer, Hodgson, Brown, Wolff & Leach, Saint Paul, Minn., on the brief.

George A. Frilot, III, of Lemle, Kelleher, Kohlmeyer, Matthews & Schu-

Sellars, the decedent, and Willie Fivecoat, another deckhand, were in charge of attaching the cables on the starboard side. Decedent was on the starboard stern of Barge J-10 and Fivecoat on the

starboard bow of the towboat. Two other deckhands were attending to similar duties on the port side. Fivecoat was laying out slack from the starboard manual winch, and when he looked up he saw decedent pick up the end of the cable with both hands from a hook on the side of the tow knee, lose his balance and fall overboard. Fivecoat was the only eyewitness and according to his testimony decedent only surfaced once about a foot from the barge before submerging again and instantly being swept by the swift current under the barge of the tow before any assistance could be given. This all occurred within a matter of seconds and decedent, although an experienced deckhand, had failed to wear his life jacket in disregard of the posted rules aboard the HILMAN LOGAN.

Plaintiff alleged negligence on the part of defendant in not providing sufficient men to safely perform the facing up operation, by not enforcing the rule requiring the wearing of a life jacket, and in not having an established man overboard procedure. Defendant denied any guilt of negligence on its part and pleaded contributory negligence on the part of decedent. Defendant's contention was that decedent was negligent inasmuch as he performed the job in an unsafe manner because he did not wait for help when lifting the wire from the tow knee, or, if he intended to complete the job alone, he failed to hold onto the tow knee with one hand and handle the cable with the other.

Plaintiff first contends that the court, by its instructions, erred in such a way as to afford defendant additional defenses contrary to defendant's position and without support in the record. The specific language included in the court's charge and objected to as affording additional defenses contrary to defendant's position without record support is as follows:

"I gather from the evidence and from the argument of the defendant that the principal urging of the defendant in support of his claim of contributory negligence by the deceased is not that

he did not wear a life jacket, but that he should have waited for a fellow worker to assist him in this job he was doing, or if he was going to do it himself, he should have held onto some superstructure of the vessel as the defendant claims was the customary practice in the industry."

We find this argument without merit because it was defendant's contention throughout that decedent was negligent in taking the cable off the hook on the tow knee without using one hand to brace himself on the tow knee and the other hand to lift the wire off the hook, or, if assistance was desired, to wait until the other deckhand had completed laying out the cable and could assist. Counsel for defendant made this position clear in his opening statement:

"Now, the defendant's proof in this case is a fairly simple, factual presentation. We intend to prove that the manner, the proper manner in which to take this wire off the hook on the towing knee was to use the towing knee as a brace, take one hand and secure yourself, and to use the other hand to lift the wire off the hook so as to avoid permitting yourself to fall off balance. If that precaution is not to be taken our evidence will show that you had to have someone to help you. It was possible to do it by yourself, but to do it you had to take that precaution. That basically is what we intend to show was the mistake that the plaintiff made, the decedent made, and cost him his life.

"There was only one eyewitness to this accident, and you haven't heard his testimony yet, and that is Mr. Fivecoat's who was working with the decedent just prior to his death. We will show that what the decedent did was come up to the wire and reach up with two hands, reaching around the side of the towboat and that he then, as he lifted the wire off the hook, lost his balance, dropped the wire into the water, waved his hands a few times in an attempt to catch his balance and fell feet first into the water."

We note that the particular language of the court's instructions amounted to nothing more than an explanation of defendant's theory of the case as outlined by counsel in his opening statement. Further, in counsel's closing argument he reminded the jury of Mr. Fivecoat's testimony that as he raised up from handling the lines on the side of the boat it was his intention to render whatever assistance was necessary to decedent in lifting the wire but that decedent did not choose to wait for help but lifted the wire by himself and in such a fashion as caused him to lose his balance and thus lose his life. Counsel added in his closing argument, "I submit to you that this is the sole cause of Mr. Sellars' death." The court's statement in the charge was not only proper but it was not in any sense a binding instruction and amounted to a mere paraphrasing of defendant's theory of the case. There was substantial evidence to support this theory and defendant, of course, was entitled to instructions on any theory of the case that has support in the evidence. This court said in Megarry Brothers, Inc. v. United States, 404 F.2d 479, 489 (8th Cir. 1968): "A party is entitled to have proper requested instructions on his theory of the case if there is evidence to support it."

The above rule is fundamental and certainly no prejudice could have resulted from the trial court's statement.

Plaintiff also argues that the court's instruction on the emergency doctrine was erroneous. The allegedly objectionable part of the court's charge is the first paragraph quoted below:

"In connection with an emergency such as was occasioned here, I should advise you that in the circumstance of a sudden and unexpected occurrence, the standard of reasonableness or care is not the same as in ordinary circumstances, and so if you should find that the crew of this vessel, the Hillman [sic] Logan, were confronted with a sudden emergency when James Sellars was in the water, you should measure their conduct in the light of the circumstances and what seemed reasonable for the members of that crew to do at the time.

"Of course, as the operator of a vessel, this defendant had certain duties. It was his continuing duty, the owner of this towing company, as an employer, to use ordinary care under the circumstances in furnishing the plaintiff with a reasonably safe place in which to work, to use ordinary care under the circumstances to maintain and keep such place of work in a reasonably safe condition, to provide adequate life saving gear, and to promulgate and enforce regulations for its crews and for the rescue of seamen imperiled and to provide an adequate crew available for the discharge of the crewmen's responsibilities."

The sole objection advanced to this instruction is that the defense of sudden emergency is not available to one whose own negligence contributed to bringing it about. But here the jury found defendant free of negligence; otherwise it could not have returned the verdict it did. No prejudice could have resulted requiring a reversal even if the instruction had been a misstatement of the law. This court said in Lowe v. Taylor Steel Products Co., 373 F.2d 65, 68 (8th Cir.1967), cert. denied, 389 U.S. 858, 88 S.Ct. 85, 19 L.Ed.2d 122 (1967):

"Assuming arguendo that the court had erroneously instructed on comparative negligence, it would not have been prejudicial in this case because the jury specifically found that the defendants were guiltless in every particular of negligence charged. We find no error in the court's instruction on the law of comparative negligence but even if there had been and proper objection made thereto, we as a reviewing court would consider it harmless. It could not have affected the verdict as the rule of comparative negligence could not come into play without a finding that both parties were guilty of negligence. Since the defendants were found free of such guilt, the harmless error rule would

apply. This rule applies to instructions as well as other alleged errors. Judge Van Oosterhout of this court said in Minnesota Mut. Life Ins. Co. v. Wright, 312 F.2d 655, 661 (8th Cir.1963):

" 'Rule 61, Fed.R.Civ.P., like Rule 52(a), Fed.R.Crim.P., provides that errors which do not affect the substantial rights of the parties shall be disregarded. 28 U.S.C.A. § 2111 provides that upon appeal, harmless errors shall be disregarded. The harmless error rule applies to instructions. See Moore, Federal Procedure, para. 61.09.' "

The same principle applies here.

■ Plaintiff also complains of the lack of instruction on the weight to be given evidence of custom, but we find from a canvass of the instructions as a whole that the court fully, fairly and properly instructed the jury and in every respect afforded plaintiff a fair trial. The jury simply concluded that the unfortunate death of decedent was not in any manner the result of any negligence on the part of defendant for which liability attaches.

■■ Finally, it is argued that the court erred in permitting defendant's employees to testify as to the method they had used in the "facing up" operation. Plaintiff introduced an expert witness in an effort to show that decedent should have had help in doing this assignment as he could not safely perform it alone. This witness testified that a deckhand could not hold onto the tow knee with one hand and lift the end of the cable from the hook with the other because the tow knee was too large. In order to contradict this testimony, defendant produced two of decedent's coworkers on the HILMAN LOGAN who regularly performed "facing up" work. These witnesses testified that the job could be safely done by one man if he would hold onto the tow knee with one hand and lift the cable from the hook with the other. Both witnesses testified that the tow knee on this particular boat was not too large to hold onto. They further testified that the deckhand working on the deck of the tug would usually help the deckhand on the barge take the cable off the hook on the tow knee, and this is exactly what Fivecoat testified he contemplated doing had decedent only waited until he had finished laying out the cable rather than electing to perform the task unassisted. Certainly, the testimony as to the ability to hold onto the tow knee and perform the work unassisted was proper evidence admitted in rebuttal to plaintiff's expert testimony. Who would know better the size of the tow knee on the HILMAN LOGAN than the men who actually performed the work on this towboat? If such evidence was improper (and we do not think it was), it would have been admissible in the instant case under the doctrine of verbal completeness as plaintiff's expert first brought up the subject. Kayser v. United States, 394 F.2d 601, 606 (8th Cir. 1968), *cert. denied,* 393 U.S. 919, 89 S.Ct. 250, 21 L.Ed.2d 206 (1968); Babb v. United States, 351 F.2d 863, 866–867 (8th Cir. 1965); Newman v. United States, 331 F.2d 968, 970–971 (8th Cir. 1964), *cert. denied,* 379 U.S. 975, 85 S.Ct. 672, 13 L.Ed.2d 566 (1965); Smith v. United States, 224 F.2d 58, 60–61 (5th Cir. 1955), *cert. denied,* 350 U.S. 885, 76 S.Ct. 138, 100 L.Ed. 780 (1955). To have rejected such evidence in the context of this case would have had a misleading effect on the jury and would have been highly improper.

We are convinced that the plaintiff was afforded a fair trial completely free of any prejudicial error and that substantial evidence supports the jury verdict. The judgment is affirmed.