## CAMPBELL v. UNITED STATES.
### No. 9867.

United States Court of Appeals
District of Columbia Circuit.

Argued May 9, 1949.

Decided June 6, 1949.

Mr. James J. Laughlin, Washington, D.C., for appellant.

Mr. Richard M. Roberts, Assistant United States Attorney, Washington, D.C., with whom Messrs. George Morris Fay, United States Attorney, Joseph M. Howard and Arthur J. McLaughlin, Assistant United States Attorneys, Washington, D.C., were on the brief, for appellee. Messrs. Sidney S. Sachs, John D. Lane and L. Clark Ewing, Assistant United States Attorneys, Wash-

ington, D.C., also entered appearances for appellee.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge. Found guilty by a jury in the United States District Court for the District of Columbia of assault with intent to commit rape and also of simple assault, Ciberto Rudolph Campbell appeals.

■ He relies for reversal upon four points, three of which are so insubstantial as to require little discussion: (a) he maintains that the verdict was contrary to the evidence, but we find in the record abundant and convincing testimony which amply justified the jury's verdict; (b) he says the court erred in refusing to tell the jury to receive "with care and caution" the evidence of the two small girls who were the victims of the assaults, but the instruction given on that subject, which we regard as sufficient, was to consider the tender years of those two witnesses in determining what weight to give their testimony; (c) he complains of the court's refusal to instruct that an accusation of an attempt to have carnal knowledge is "easily to be made and hard to disprove, but harder still to defend against, though the defendant be ever so innocent", but our view is that that statement, appropriate enough in argument perhaps, obviously has no place in a charge to a jury.

The appellant's fourth ground for reversal presents a question of first impression in this jurisdiction. While testifying in his own behalf, he was asked whether he had ever been convicted of a crime and, upon being required to answer, disclosed the fact that a few weeks before in the Municipal Court he had been convicted of petit larceny. He vigorously argues that it was error to admit evidence of this previous conviction because an appeal therefrom was then pending in the Municipal Court of Appeals for the District of Columbia.

■ At common law, a witness could be asked, for impeachment purposes, whether he had ever been convicted of a crime only if the conviction had been for an infamous crime involving moral turpitude. The matter is governed in the District of Columbia by Title 14, § 305, of the District of Columbia Code (1940), which is as follows:

"No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence aliunde; and the party cross-examining him shall not be concluded by his answers as to such matters. In order to prove such conviction of crime it shall not be necessary to produce the whole record of the proceedings containing such conviction, but the certificate, under seal, of the clerk of the court wherein such proceedings were had, stating the fact of the conviction and for what cause, shall be sufficient. (Mar. 3, 1901, 31 Stat. 1357, ch. 854, § 1067; June 30, 1902, 32 Stat. 540, ch. 1329.)"

The rationale of the statute was thus stated by this court in Clawans v. District of Columbia, 1932, 61 App.D.C. 298, 299, 62 F.2d 383, 384:

"* * * the basis of the admissibility of convictions always was and always should be grounded upon the theory that the depraved character of persons who commit crimes involving moral corruption makes them unworthy of trust in testifying."

This reason for receiving evidence of a prior conviction is exactly that which formed the basis of the common law rule; that is to say, one who has been convicted of a crime involving moral turpitude deserves less credit as a witness than one who has not been so convicted; consequently the jury should know if a witness has been convicted of such a crime so that it may weigh that fact in passing upon his credibility.

■ It was held in the Clawans case that a violation of a municipal ordinance is not a crime within the meaning of the Code provision permitting a former conviction of crime to be shown to affect credibility, but this court has held in other cases that the statute does not limit such proof to con-

viction of a felony, since the word "crime" includes both felonies and misdemeanors. Murray v. United States, 1923, 53 App.D.C. 119, 288 F. 1008, certiorari denied 262 U.S. 757, 43 S.Ct. 703, 67 L.Ed. 1218; Bostic v. United States, 1937, 68 App.D.C. 167, 94 F.2d 636, certiorari denied 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095; Sanford v. United States, 1938, 69 App.D.C. 44, 98 F.2d 325. Save for these decisions, we should be inclined to construe the word "crime" in the statute as being synonymous with the word "felony", thus attributing to Congress the intention of merely codifying the common law rule which has a reasonable basis, instead of extending it to include misdemeanors, which may not involve moral turpitude from which depravity may be inferred. But we are not disposed to disturb a statutory construction which has been followed for more than a quarter of a century, especially since Congress has not seen fit during that long period to manifest dissatisfaction with it by amending the Code provision. Under that interpretation, if Campbell had been finally convicted of petit larceny, it was not error to allow that fact to be elicited from him by cross-examination or to be shown by evidence aliunde.

But it seems to us wholly illogical and unfair to permit a defendant to be interrogated about a previous conviction from which an appeal is pending. If the judgment of conviction is later reversed, the defendant has suffered, unjustly and irreparably, the prejudice, if any, caused by the disclosure of the former conviction. We therefore hold that the pendency of an appeal prevents the prosecution from proving a previous conviction for impeachment purposes; and that the District Court erred in admitting evidence concerning Campbell's conviction when his appeal therefrom had not been determined. It is noteworthy that the trial judge, himself a former United States Attorney who served with distinction, expressed grave doubt as to the admissibility of the conviction, repeatedly warned government counsel of the risk of reversible error involved in asking the question, and was persuaded to permit it only by authorities from state courts which were submitted to him.

We turn next to the task of determining whether the error to which we have just referred was so prejudicial as to require reversal. In modern times appellate courts no longer "tower above the trials of criminal cases as impregnable citadels of technicality."[1] This is so because we are now admonished by Rule 52 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., as we were by the statute of 1919 which preceded it, to disregard "any error, defect, irregularity or variance which does not affect substantial rights."[2] The Supreme Court noted in Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, the practical difficulty experienced by appellate courts in determining whether an error on the trial was merely technical or whether it affected the defendant's rights so substantially as to make it necessary to set aside his conviction. The admonition of Rule 52 is a simple one, but obeying it is not an easy task. As the Supreme Court said in the Kotteakos case:

"* * * the discrimination it [the Act of 1919, formerly 28 U.S.C.A. § 391, sec n. 2] requires is one of judgment transcending confinement by formula or precise rule." 328 U.S. page 761, 66 S.Ct. page 1246. * * *

---

[1] Quoted by Mr. Justice Rutledge from Kavanagh, Improvement of Administration of Criminal Justice by Exercise of Judicial Power, 11 A.B.A.J. 217, 222 (1925), in Kotteakos v. United States, 1946, 328 U.S. 750, 759, 66 S.Ct. 1239, 1245, 90 L.Ed. 1557.

[2] This Rule is a restatement of the following sentence from an act of Congress of February 26, 1919, 40 Stat. 1181, which became a part of 28 U.S.C.A. § 391 and which was omitted from the 1948 revision of Title 28 because it is embodied in the Criminal and Civil Rules:

"* * * On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

This was the section to which Mr. Justice Rutledge referred in the Kotteakos opinion.

"In the final analysis judgment in each case must be influenced by conviction resulting from examination of the proceedings in their entirety, tempered but not governed in any rigid sense of stare decisis by what has been done in similar situations. * * * Necessarily the character of the proceeding, what is at stake upon its outcome, and the relation of the error asserted to casting the balance for decision on the case as a whole, are material factors in judgment." 328 U.S. page 762, 66 S.Ct. page 1246. * * *

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress. Bruno v. United States, supra [308 U.S. 287], at page 294, 60 S.Ct. 198, 84 L.Ed. 257. But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." 328 U.S. pages 764–765, 66 S.Ct. page 1248.

In the light of these guiding principles, we have carefully read the transcript of the evidence in this case in an attempt to determine what effect the erroneous admission of evidence concerning Campbell's conviction for petit larceny may have had upon the judgment of the jurors. We are fully persuaded that it had very slight, if any, effect. "After pondering all that happened without stripping the erroneous action from the whole", as the Supreme Court said in the Kotteakos case should be done, we say not only with fair, but with full, assurance that the jury was not substantially swayed by the error.

Concerned as it was with considering evidence of revolting criminal acts, it is not conceivable that the jury gave more than the slightest weight to the appellant's admission of having been convicted of stealing a bottle of perfume. Moreover, the jury knew the petit larceny conviction was pending on appeal, and heard the appellant's uncontradicted statement of allegedly newly-discovered evidence in the larceny case which would amount to a complete defense to that charge. It is our view, after studying the proof in its entirety, that no reasonable juror would have given more than the most cursory consideration to the larceny conviction, and that proof concerning it played no substantial part in bringing about the verdict.

The appellant was fairly tried and the jury's verdict must stand.

Affirmed.