**Joseph F. FENWICK, Appellant,**

**v.**

**UNITED STATES of America, Appellee**

**No. 13951.**

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 3, 1957.

Decided Jan. 16, 1958.

Mr. Charles F. O'Neall, Washington, D. C. (appointed by this Court), for appellant.

Mr. Carl W. Belcher, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Lewis Carroll and Victor Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before EDGERTON, Chief Judge, and DANAHER and BASTIAN, Circuit Judges.

DANAHER, Circuit Judge.

Appellant and Oliver James were jointly indicted, three counts charging, on February 29, 1956, possession of a Government check stolen from the mails, forged endorsement, and uttering of the check so forged. Three additional counts charged like offenses on March 31, 1956. James entered a plea of guilty to three counts as to one transaction whereupon the counts as to his alleged participation in the other occurrence were dismissed. Appellant went to trial, and this appeal follows his conviction.

One Doris Johnson had lived where appellant made his abode until his father invoked the aid of police to bring about her ejectment. She testified that appellant had given her a Government check upon which she had forged an endorsement in the name of the payee and that appellant waited outside a liquor store while she and James entered the store and cashed the check. Thereafter having delivered the proceeds to appellant, she received $9 as her share.

One Kay Glenn testified that appellant had beaten her; she had seen appellant in possession of the check involved in the March 31, 1956, transactions; she and appellant waited outside a clothing store while James entered and purchased clothing with the forged check; James, upon his return, gave to the appellant money, a pair of trousers and two shirts. The Government also elicited from her that she had seen appellant with yet other checks, none of which was identified, and for all that appeared, they might not have been stolen or forged or uttered.

James, called as a defense witness, identified both checks, but denied appellant's alleged complicity, the alleged participation by Kay Glenn, and that appellant had received the proceeds from the cashing of either check. He insisted he

would not give appellant "no money from nothing" for "He was going with my wife. I stopped playing with him." Confronted with a statement he had given to Government agents, James acknowledged he had signed it, observed that it referred to five checks, but repudiated the entire writing.

Appellant denied all participation whatever in the various occurrences. The Johnson woman, he said, had been in "some kind of training school," and to avoid her mother's charges that he might be "harboring this girl" he had his father send for the police to take her away. As to the Glenn woman, "I couldn't marry her, see; I had a wife already, see. I couldn't marry her."

Thus, the Government's case, developed through two alleged accomplices who had grounds for hostility, purported to demonstrate a pattern of conduct, a continuing scheme, or plan, directly denied by the appellant. Against that background, appellant on cross-examination was asked:

"And in this court, in Criminal No. 846–56, you were convicted of *the same offense* as you are being tried for today, *possession of a check knowing that it was stolen, forgery and uttering?*" (Emphasis supplied.)

Appellant had been convicted but had appealed. That case had nothing to do with the offenses charged in the instant case except that similar counts had been set forth which dovetailed with the "scheme" or "pattern" here said to have been followed. It must be conceded that the Government could not here seek conviction because of what had occurred in some prior case. Defense counsel urged that the Government might not properly "use a prior conviction and try to relate it to this one, to the one he is being tried for here." When the trial judge answered that the Government "is not trying to do that," the prosecutor replied "I am saying it is a similar offense." In the course of further colloquy the following occurred:

"The Court: You see, what you are trying to get at, I think, is this: Even though you had not put character in evidence, the Government could show related offenses for the purpose of showing intent or scheme, or a plan, but you have now put character in evidence.

\* \* \* \* \* \*

"The Court: And which gives the Government the right to explore every angle of character and to bring out all the details."

After a recess the prosecutor continued:

"Q. I think you answered the last question about that conviction.

"Now, in a case in this court in January, the case went to trial on the 23rd of January, 1957, which case I prosecuted against you, you were convicted of possession of a check, were you not, knowing that it was stolen, and you were also convicted of forgery and uttering?

"A. Your Honor, there is a decision pending in the Court of Appeals about that.

"The Court: Now, you answer the question, and then make your explanation.

"The Witness: That is right.

"The Court: Now, if you want to make some explanation, go ahead.

"The Witness: There is an opinion in the Court of Appeals pertaining to this whole matter about the jurisdiction in this matter, see, and this is pending appeal now, and I just wanted the Court to protect my rights, and I just wanted to know whether the District Attorney was within his rights to ask that question.

"The Court: Well, you answer any questions that are asked you unless I rule on objection that they are not admissible, and then you can make whatever explanation you want to make.

"The Witness: Well, I just wanted to put it on the record, your Honor."

The colloquy only tends to emphasize the degree of involvement of this appellant in what the jury must have deemed, as did the trial judge himself, the Government's purpose to show appellant's continuing scheme or pattern in the instant case by his prior conviction for "the same offense."

D.C.Code § 14–305 (1951), provides in pertinent part:

"No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witnesses or by evidence aliunde * * *."

Clearly it would be improper, for impeachment purposes, to show accusation, arrest, or indictment as well against the accused in a criminal trial as against a witness in any case, civil or criminal.[1] We have pointed out in furtherance of this principle that where the time for appeal had not expired, evidence of a conviction is inadmissible.[2] In the Beasley case, objection having been voiced, the trial judge immediately ruled that the jury should not consider the question or answer. We concluded that the error had been cured by his prompt instruction that the jury disregard the episode. We are satisfied that the intendment of our Code, supra, requires that there be a final conviction before "such fact may be given in evidence." It has seemed to us

"wholly illogical and unfair to permit a defendant to be interrogated about a previous conviction from which an appeal is pending. If the judgment of conviction is later reversed, the defendant has suffered, unjustly and irreparably, the prejudice, if any, caused by the disclosure of the former conviction. *We therefore hold that the pendency of an appeal prevents the prosecution from proving a previous conviction for impeachment purposes;* and that the District Court erred in admitting evidence concerning Campbell's conviction when his appeal therefrom had not been determined."[3] (Emphasis supplied.)

It fairly should be noted that neither counsel called to the attention of the visiting judge the rule which we had announced in the Campbell case. Had he been so advised, he could have instructed the jury as had been done in the Beasley case. The appellant here had, and admitted, a "record" of final convictions of petty larceny and the like, to be sure. It is possible the jury would have returned a guilty verdict in any event. However, we cannot escape the conclusion that the jury here might well have given far more than "cursory consideration"[4] to the prosecutor's questions, framed as we have shown, against the background of the case as we have summarized it. Under all the circumstances we cannot here say as we did in the Campbell case that the error had slight, if any, effect. Rather, we are

1. Sanford v. United States, D.C.Cir.1938, 69 App.D.C. 44, 98 F.2d 325.

2. Beasley v. United States, D.C.Cir.1954, 94 U.S.App.D.C. 406, 409, 218 F.2d 366, 369, certiorari denied, 1955, 349 U.S. 907, 75 S.Ct. 584, 99 L.Ed. 1243.

3. Campbell v. United States, D.C.Cir. 1949, 85 U.S.App.D.C. 133, 135, 176 F.2d 45, 47. We are aware that other Courts of Appeals have taken a different view. See, e. g., Bloch v. United States, 9 Cir., 1955, 226 F.2d 185, 188, certiorari denied 350 U.S. 948, 76 S.Ct. 323, 100 L.Ed. 826, rehearing denied, 1956, 350

U.S. 977, 76 S.Ct. 432, 100 L.Ed. 847, but we do not understand their decisions to have been related to a statute comparable to our Code section, supra. The Government argues that there is no reversible error because appellant's conviction has since been affirmed. Fenwick v. United States, D.C.Cir. Oct. 3, 1957, 101 U.S.App.D.C. ——, 249 F.2d 931. We regard this circumstance as immaterial in view of our holding in the Campbell case, supra.

4. Id. 85 U.S.App.D.C. at page 136, 176 F.2d at page 48.

satisfied that the consequences of the error were sufficiently grave that a new trial must be ordered.

Reversed and remanded.

EDGERTON, Chief Judge.

I concur in Judge Danaher's opinion. Though the erroneously admitted conviction was later affirmed, we cannot know that its admission in evidence was not prejudicial. Though that conviction may hereafter be admitted for the purpose of impeaching the defendant as a witness if he testifies at a new trial, we cannot know that there will be a new trial, or that the defendant will testify, or that a new trial will not result in an acquittal, a hung jury, or a conviction reversed on appeal. The possibility that there may be a valid conviction is not a good reason for affirming the present invalid one.

BASTIAN, Circuit Judge (dissenting).

I cannot agree that the conviction in this case should be reversed.

When Fenwick had completed his direct testimony, the Assistant United States Attorney commenced his cross-examination in the not unusual manner of showing convictions for prior offenses to affect Fenwick's credit as a witness.[1] Fenwick admitted the following convictions:

1. Convicted of attempted burglary 3rd degree and possession of burglary instruments; June 27, 1956.

2. Convicted of petty larceny; May 5, 1953.

3. Convicted of petty larceny; May 21, 1952.

4. Pleaded guilty to petty larceny; September 2, 1951.

Thereupon he was asked:

"And in this court, in Criminal No. 846–56, you were convicted of the same offense as you are being tried for today, possession of a check knowing that it was stolen, forgery and uttering?"

Upon objection being made to this question, a bench conference was held. To defense counsel's statement at this bench conference that "[y]ou cannot use a prior conviction and try to relate it to this one, to the one he is being tried for here" the trial judge responded by saying, correctly I think: "He is not trying to do that." However, in any event, the question was left unanswered; and, after a recess taken at this point, the following question was asked:

"Now, in a case in this court in January, the case went to trial on the 23rd of January, 1957, which case I prosecuted against you, you were convicted of possession of a check, were you not, knowing that it was stolen, and you were also convicted of forgery and uttering?"

After the colloquy and answer [which are set forth in the majority opinion and not necessary to be repeated here], the cross-examination continued as to matters other than impeachment. Thus it will be seen that appellant was *not* charged with having engaged in a general scheme and that there was no attempt on the part of the prosecutor to tie appellant in with any such general scheme. He was charged with several *separate*, specified offenses.[2] The ques-

1. § 14–305 D.C.Code (1951 Ed.): "No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness, either upon the cross-examination of the witness or by evidence aliunde. * * *"

2. As a matter of fact, the court, in its charge, eliminated any possible question of a "continuous scheme." The court said:
"This is a criminal charge, a six-count indictment charging this defendant, Mr. Fenwick, Joseph Frederick Fenwick, with having committed certain offenses with reference to two Government checks. All of those offenses are felonious and three of them have to do with the circumstances surrounding one check, three of them have to do with the circumstances surrounding the other check. It

tion, used by the majority as a basis for reversal, was introduced simply to affect appellant's credibility, as were the other convictions, and for no other purpose.

I recognize, of course, that this court ruled, in Campbell v. United States, 1949, 85 U.S.App.D.C. 133, 176 F.2d 45, 47, that it is "wholly illogical and unfair to permit a defendant to be interrogated about a previous conviction from which an appeal is pending." However, in that case it was pointed out that reversal was not there required where such a question was asked:

> "Moreover, the jury knew the petit larceny conviction was pending on appeal, and heard the appellant's uncontradicted statement of allegedly newly-discovered evidence in the larceny case which would amount to a complete defense to that charge. It is our view, after studying the proof in its entirety, that no reasonable juror would have given more than the most cursory consideration to the larceny conviction, and that proof concerning it played no substantial part in bringing about the

verdict." 85 U.S.App.D.C. at page 136, 176 F.2d at page 48.

I feel that substantially the same can be said about the present case, and that the proof concerning the prior convictions "played no substantial part in bringing about the verdict" here.

There can be no doubt that the evidence of the conviction involved is not inadmissible simply because the crime involved was the same as that for which he was on trial.

Further, it is to be borne in mind that the conviction referred to in the question involved was in fact affirmed. It might well be that had that conviction been reversed, the conviction in this case might likewise have to be reversed for error in admitting that testimony.

I think it is a great mistake to reverse the conviction in this case and put upon the Government the necessity of a new trial when the same question may now be asked, particularly as it may not be possible to procure the witnesses who were available at the first trial. I therefore dissent

---

is just as if you were trying two separate indictments against this man. The two instances are not connected in any way, but it is within the rules of the criminal jurisprudence of this country that these two charges may be tried at the same time. That is for the purpose of saving time and expense both to the Government and to the defendant, so as to make it more convenient, but you must bear in mind that there are two separate and distinct instances; three centering on one check and three centering on the other."

Again, in commenting on the fact that the testimony was largely that of accomplices, and that the testimony of accomplices is always to be received with great caution, the court carefully pointed out

that the offenses were different and that no scheme was involved. The court said:

"The fact that there are two of those [accomplices] does not mean that one corroborates the other, as you will easily see when you consider that they are entirely different offenses. Doris Elaine Johnson didn't know anything about the check that was taken into the clothing store, and Kay Glenn didn't know anything about the check that was taken into the liquor store. Each one of them testified as to a certain check and therefore her testimony is uncorroborated. Doris Johnson's testimony about the liquor store check is uncorroborated. Kay Glenn's testimony about the clothing store check is uncorroborated."