William Dennis RIGGS, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17449.

United States Court of Appeals Fifth Circuit.

July 14, 1960.

Robert B. Thompson, Gainesville, Ga., for appellant.

David C. Clark, Jr., Asst. U. S. Atty., E. Coleman Madsen, U. S. Atty., S. D. Florida, Miami, Fla., for appellee.

Before RIVES, Chief Judge, and HUTCHESON and BROWN, Circuit Judges.

RIVES, Chief Judge.

This appeal is from a judgment of conviction followed by a sentence of imprisonment for four years. The seven-count indictment charged the defendant with conspiracy and with substantive offenses of uttering counterfeit $20.00 Fed-

eral Reserve Notes[1] and of dealing in such counterfeit obligations.[2]

Proof of the substantive counts and of the overt acts charged in the conspiracy count depended upon the testimony of two brothers, Robert Lee Phelps and Charles Jimmy Phelps. Charles Jimmy Phelps testified that in March, 1957, he sold to the defendant a truck for the assumption of a two-hundred dollar indebtedness on the truck and the payment of seven hundred dollars in twenty-dollar bills which both parties knew and understood were counterfeit. On cross-examination, he identified a written bill of sale for the truck which he had executed and delivered to the defendant. The defendant testified that the amount of cash was $250.00 paid in legitimate currency and that he assumed the two hundred dollars owed on the truck. About a week later, according to each of the Phelps brothers, Robert Lee sold to the defendant a 25 horsepower Johnson outboard motor, which a boy friend of his had stolen and given to Robert Lee to sell. Both of the brothers claimed to have been present on this occasion and testified that the defendant gave them $140.00 in known counterfeit notes and $25.00 in cash for the motor. The defendant denied ever having owned an outboard motor and denied having had any such transaction with the Phelps brothers, or either of them. There was no testimony of any counterfeit obligations or securities, or of any plates or paraphernalia connected therewith having been found in the defendant's possession.

This brief recital of the crucial portions of the evidence is enough to show that the district court properly denied defendant's motion for judgment of acquittal. The manifest object of the statutes involved "is to protect against all attempts at fraud upon the genuine monetary obligations or securities of the United States." Brooks v. United States, 5 Cir., 1935, 76 F.2d 871. On the conspiracy count, if the jury believed the Phelps brothers, it could have found more than a mere sale or transfer to them by the defendant of counterfeit notes;[3] it could have found that the defendant and the Phelps brothers agreed or conspired together to pass the counterfeit obligations to third persons as genuine currency. As to the substantive counts, the "intent to defraud" required by 18 U.S.C.A. § 472, when, as here, such intent is not restricted by the terms of the indictment or by a bill of particulars to any specified person, may be an "intent to defraud" unknown third persons or the United States itself. Friedman v. United States, 6 Cir., 1925, 5 F.2d 671; United States v. Rabinowitz, 2 Cir., 1949, 176 F.2d 732, 734; 37 C.J.S. Forgery § 100, pages 104, 105. When "intent to defraud" under Section 472 is charged generally, we agree with the view of Judge Learned Hand, expressed in the case last cited, that there is no tenable distinction between such intent and the intent required by the next section, viz.: "* * * with the intent that the same be passed, published, or used as true and genuine * * *." 18 U.S.C.A. § 473.

1. "§ 472. *Uttering counterfeit obligations or securities*
 "Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both." Title 18 U.S.C.A. § 472.

2. "§ 473. *Dealing in counterfeit obligations or securities*

 "Whoever buys, sells, exchanges, transfers, receives, or delivers any false, forged, counterfeited, or altered obligation or other security of the United States, with the intent that the same be passed, published, or used as true and genuine, shall be fined not more than $5,000 or imprisoned not more than ten years, or both." Title 18 U.S.C.A. § 473.

3. Compare United States v. Falcone, 1940, 311 U.S. 205, 210, 211, 61 S.Ct. 204, 85 L.Ed. 128; Johns v. United States, 5 Cir., 1952, 195 F.2d 77, 79, 80.

While the evidence thus presented a case for the jury's determination, the case would not have been a strong one for conviction if it had been allowed to depend solely on the testimony of the two Phelps brothers. Robert Lee Phelps, on March 26, 1957, had been arrested for armed robbery in North Carolina, and had been convicted of that crime and sentenced to from five to seven years in the state penitentiary. At the time of his arrest, five $20.00 counterfeit Federal Reserve Notes were found on his person. Charles Jimmy Phelps had been arrested on March 28, 1957, at the Villa Fair Trailer Court near Miami, Florida, and three $20.00 counterfeit Federal Reserve Notes were taken from him. Charles Jimmy Phelps had also been indicted for conspiracy with several other persons, not including the defendant, to utter and deal in counterfeit $20.00 Federal Reserve Notes and had pleaded guilty, followed by judgment of conviction and sentence for that offense.

The $20.00 Federal Reserve Notes which the officers had found in the possession of each of the Phelps brothers were clearly proved by expert testimony to be counterfeit. The only witnesses, however, who traced that counterfeit back to the defendant were the Phelps brothers themselves. Each of the Phelps brothers had been convicted of a felony, and each had testified that he was a willing accomplice with the defendant in the commission of the crimes here charged.

Two things occurred, however, which made defendant's conviction almost inevitable, and in connection with each of these occurrences we find that reversible error was committed.

 First, the Government produced two surprise witnesses: Warren Odham, a former employee of the defendant in his dog food plant; and John Marshall, a Government Secret Service Agent. Odham testified that in April, 1957, the defendant had given him three twenty-dollar counterfeit bills with the statement that, "We will split them." Odham testified that Secret Service Agent Marshall was called and the counterfeit bills shown to him, and that under his supervision he returned the counterfeit bills to the defendant. Mr. Marshall verified the fact that Odham had shown him three counterfeit twenty-dollar notes, each of which bore the same serial number, and that he had instructed Odham to deliver the notes to the defendant; that the last he saw of the notes they were in Odham's possession; that he did not see Odham deliver the notes to defendant, but did see him go to defendant's dog food plant with the notes, and "When Mr. Odham left the dog food plant I searched his pockets and he did not have the three notes in his possession."

This transaction, though of course known to the Government, was in no way referred to among the overt acts of the alleged conspiracy or in any other way in any count of the indictment. Obviously, it was saved to be used as a surprise knockout blow. As soon as the testimony started coming in, defendant's counsel objected and claimed that "the defense is taken thoroughly and completely by surprise." At the conclusion of the testimony of the two surprise witnesses, the defendant's counsel again called to the attention of the court that the testimony " * * * was a complete surprise to the defense, which could not have been foreseen or anticipated from anything set forth in the indictment, and that it tended to prejudice the defendant seriously * * *." The charge of surprise was not denied by the prosecution, and the district court conceded, "It is true it may have been a surprise. I don't know; it is quite possible. Of course, very often there are surprises in litigation." Finally, the district court denied the motion of defendant's counsel for a mistrial, possibly because the judge was of the opinion that to grant such a motion would be "having the civil rules apply to criminal cases." [4] That, of course, is not at all

---

4. "Mr. Cushman: I move the Court to declare a mistrial because of the admissions of the testimony of those two witnesses.

true. The district court had ample power, upon the motion of defendant's counsel, to protect the defendant by declaring a mistrial and then continuing the case in order to afford the defendant an opportunity to meet the testimony of these surprise witnesses. 22 C.J.S. Criminal Law § 498d, pages 792, 793. It is true that the taking *vel non* of such action rested in the sound judicial discretion of the trial judge. Clapp v. United States, 8 Cir., 1927, 18 F.2d 906, 907. If the district court actually failed to exercise its discretion in that respect, a vacation or reversal of its judgment would be required. Marsh v. Illinois Central R. Co., 5 Cir., 1949, 175 F.2d 498, 500; Miller v. Tennessee Gas Transmission Co., 5 Cir., 1955, 220 F.2d 434, 435.

█ Assuming, however, that the court did exercise its discretion to deny the motion for mistrial, we find no abuse of discretion. Nor do we agree with appellant that the evidence in itself was inadmissible. If its mere introduction were all that occurred in connection with its offer and reception, we think no reversible error would have been shown. But this was by no means all. As appellant points out in his brief and as the record plainly and affirmatively shows, the defendant was deprived of a fair trial by the cloak and dagger manner of getting this surprise testimony into evidence and the very damaging emphasis put upon and imparted to it by the trial judge's active and vigorous participation in the examination of Odham.

█ The second thing, which, in all probability, brought about the defendant's conviction, was proof that another jury had recently found the defendant guilty of a different but unspecified felony. The Government began its cross-examination of the defendant, as follows:

"Q. (By Mr. Clark) Have you ever been convicted of a felony? Just 'yes' or 'no.'

"Mr. Cushman: I don't know whether he knows what a felony is.

"The Court: It is a crime for which he may be imprisoned for more than one year in the penitentiary.

"Mr. Cushman: If you know, say so.

"A. I was convicted of an OPS violation in '51. I had a little slaughter house. That was—what I was going to tell you awhile ago, that is the beginning of my knowing Odham. He was a chief investigator for the OPS.

"Mr. Cushman: Frankly, I don't know whether that is a felony or not.

"The Court: I don't, either.

"Q. (By Mr. Clark) Is that the only time? A. Yes, sir.

"Q. Do you mean to tell me that is the only time you have been convicted? A. No, sir. I was just convicted of one in this court. I believe you happen to know about it.

"Q. That is what I thought.

"Mr. Cushman: I think that is not a proper question because there has never been any judgment or sentence entered on the verdict. I think the Court knows that.

"The Court: I think he has been found guilty.

"Mr. Cushman: That is correct.

"The Court: Let's call it a day at that. There was a trial and he was found guilty; no sentence."

The other case, thus obliquely and inadequately, without stating the nature and character of the offense, referred to for purposes of impeachment, was separately appealed to this court and has recently been decided. Riggs v. United States, 5 Cir., 280 F.2d 949. The record in that case shows that the jury's verdict finding the defendant guilty of con-

"The Court: That will be denied.
"Mr. Cushman: I move, your Honor—
"The Court: We haven't got around, counsel, to having the civil rules apply to

criminal cases. Maybe some day it will be done, but it has not been done yet.
"Mr. Cushman: I think, perhaps, your Honor is right. * * *"

spiracy to violate the internal revenue laws relating to distilled spirits was returned on March 26, 1958, while the judgment of conviction was not entered until July 25, 1958. During the interim, the present trial had taken place in the district court on May 22 and 23, 1958.

The cases are divided and this Court has not spoken as to admissibility *vel non* for impeachment purposes of a conviction for crime which is subject to appeal.[5] Among the federal Courts of Appeals, the Seventh Circuit and the Ninth Circuit have ruled such convictions admissible. United States v. Empire Packing Co., 7 Cir., 1949, 174 F.2d 16, 20; Bloch v. United States, 9 Cir., 1955, 226 F.2d 185, 188; Id., 1956, 238 F.2d 631, 632. The Second Circuit has agreed that such testimony is admissible in a case where the convictions were later reversed but followed by pleas of guilty and other judgments of conviction. United States v. Cipullo, 2 Cir., 1948, 170 F.2d 311, 313. In a very late case, the Second Circuit has not questioned the ruling in a case where the conviction had been affirmed. United States v. Owens, 2 Cir., 1959, 271 F.2d 425, 426. The District of Columbia Circuit has ruled such testimony inadmissible. Campbell v. United States, 1949, 85 U.S. App.D.C. 133, 176 F.2d 45, 47; Fenwick v. United States, 1958, 102 U.S.App.D.C. 212, 252 F.2d 124, 126.

However the conflict among the circuits may ultimately be settled as to the admissibility for impeachment of a judgment of conviction which is subject to appeal, none of the federal appellate courts, so far as we are advised, has passed upon the admissibility in evidence of a verdict of guilty prior to the entry of a judgment of conviction thereon. Compare 2 Wigmore on Evidence, 3rd ed., § 521; 98 C.J.S. Witnesses § 507b, page 410. Again, however, we need not undertake to determine that question, for, whatever we might conclude, if the offer had been a completed one, that is had shown a prior verdict of guilt of a specific offense, the record as set out above wholly fails to show the nature of the offense. The admission of the evidence in that form may well have led the jury to believe that another jury had found the defendant guilty of counterfeiting or of some similar offense. The district court erred to the prejudice of the defendant in thus accepting the Government's partial, incomplete, and misleading offer of proof.

For the errors indicated, the judgment is reversed and the cause is remanded.

Reversed and remanded.

---

5. Many of the cases are collected in a series of A.L.R. notes, 6 A.L.R. 1647; 25 A.L.R. 348, 103 A.L.R. 367; 161 A.L.R. 282.