UNITED STATES of America,
Plaintiff,

v.

James KERMIDAS, Defendant.

UNITED STATES of America,
Plaintiff,

v.

Samuel RIVIELLO, Defendant.

UNITED STATES of America,
Plaintiff,

v.

Gerald F. ROHLAND, Defendant.

Crim. Nos. 14558, 14560 and 14562.

United States District Court,
M. D. Pennsylvania.

Sept. 30, 1971.

S. John Cottone, U. S. Atty., Scranton, Pa., for plaintiff.

William Zacharellis, Scranton, Pa., for defendant Kermidas.

Edwin Utan, Scranton, Pa., for defendant Riviello.

Peter Webby, Wilkes-Barre, Pa., for defendant Rohland.

## MEMORANDUM

NEALON, District Judge.

Defendants Anthony Farano, James Kermidas, Gerald F. Rohland and Samuel Riviello were tried jointly on separate two-count indictments [1] charging each with (1) knowingly transporting stolen copper wire and conduits from New York City to Hazleton, Pennsylvania, in violation of 18 U.S.C. § 2314 and 18 U.S.C. § 2, and (2) receiving and selling said stolen goods, knowing them to have been stolen, in violation of 18 U.S.C. § 2315 and 18 U.S.C. § 2. In addition, all four defendants were indicted in Criminal No. 14563 and charged with conspiracy under 18 U.S.C. § 371.

At the conclusion of the Government's case in chief, a motion for judgment of acquittal was granted as to all defendants on the conspiracy indictment, Criminal No. 14563, and as to defendant Farano on Count 2 of the indictment to Criminal No. 14556. The jury returned its verdict acquitting Farano on Count 1 of Criminal No. 14556, acquitting Kermidas on Count 1 of Criminal No. 14558, and acquitting Riviello on Count 1 of Criminal No. 14560. Defendant Rohland was found guilty on both counts to No. 14562. Kermidas was found guilty as to Count 2 to Criminal No. 14558, and Riviello was found guilty on Count 2 to

---

1. Farano was indicted in Criminal No. 14556, Kermidas in Criminal No. 14558, Riviello in Criminal No. 14560, and Rohland in Criminal No. 14562.

Criminal No. 14560. All convicted defendants have filed motions for judgment of acquittal and for a new trial.

A review of the evidence is necessary to place the motions in proper perspective.

Navajo Trucking Company (Navajo) operated a trucking terminal in South Kearney, New Jersey, and in the course of its business operation utilized independent owner-operators to deliver merchandise on behalf of Navajo's customers. During the morning of Friday, February 23, 1968, William Bohn, dispatcher for Navajo, received a telephone call from a man who identified himself as an independent trucker named John Grace and inquired whether Navajo had "any freight going West." When informed that Navajo had a load from Cerro Wire and Cable Company (Cerro) that had to be transported to Chicago, Mr. Grace stated that he was unloading a shipment in Lindenhurst, Long Island, and, when the unloading was completed, would be available to take the Chicago shipment. Mr. Bohn told Grace to proceed to the Cerro premises and load his trailer and then report to the Navajo terminal in order to pick up the necessary delivery slips and a copy of the trip-lease. At 3:00 P.M. that same day, a man appeared at the Cerro loading dock, identified himself as Mr. Grace from Navajo and was allowed to load his truck with cartons of copper wire and conduits destined for points in the vicinity of Chicago. Grace took approximately seven hours to load the trailer and signed out at the Cerro platform at 10:00 P.M. Three Government witnesses, John MacKay, Cerro's Loading Supervisor; Robert Lichtenberger, Foreman of Cerro's Shipping Department, and William Winning, Cerro's Assistant Foreman, positively identified defendant Gerald F. Rohland as the person who appeared at Cerro's premises, loaded the Chicago shipments of copper wire and conduits, and signed a receipt for the shipment as John Grace. This was the last information Cerro had concerning these items and they were never delivered to their destination in Chicago.

The next day, Saturday, February 24, 1968, Harold S. Miller, an electrical wholesaler in Scranton, was contacted by defendants James Kermidas and Samuel Riviello and asked whether he would be interested in purchasing a large quantity of surplus copper wire. When he asked to see the wire, Kermidas and Riviello left Miller's premises and returned later with Rohland, who exhibited a sample of the wire to him. Miller told them he was not interested, but agreed to seek out another electrical wholesaler, Arthur Abelson of Kingston, Pennsylvania, and determine whether he was interested in purchasing. The following morning, Sunday, February 25, Mr. Abelson came to Miller's office and met with Kermidas and Riviello. According to Abelson, although Kermidas and Riviello showed him packing slips for 2400 cartons, they were vague about what they had to sell and indicated that they were not the owners, but expected to receive a $1.00 commission from him for each carton that he purchased. In Abelson's opinion, the entire shipment had a value of approximately $15,000.00, and when he offered Kermidas and Riviello $8,000.00 for it, they replied that they would have to discuss it with the owner. They left and returned within fifteen minutes with Rohland and Abelson offered him $9,-600.00, which Rohland promptly rejected and left Miller's office. The next day, Monday, February 26, Miller called Abelson and told him that the offer had been accepted and it was agreed that delivery would be made to Abelson's Warehouse in Hazleton. That same day, two men visited George R. Shadie, an electrical contractor in Swoyersville, Pennsylvania, and attempted to interest him in buying some copper wire, but he was not interested. The wire demonstrated to him at that time was the same type as that taken from the Cerro premises. Mr. Shadie identified defendants Gerald Rohland and Anthony Farano as the two men who visited him.

Later that day, Rohland arrived at the Abelson Warehouse driving the tractor-trailer and Riviello and Kermidas accompanied him in a private automobile. All three participated in the unloading of the contents from the trailer and, when completed, Abelson paid Rohland $9,600.00 and, after Rohland left, also paid Kermidas and Riviello $2,400.00. An examination of the cartons disclosed that these were the items taken from the Cerro platform on February 23.

By way of defense, Rohland testified that he was employed by an independent trucker, William Whitford of Dalton, Pennsylvania, and on the morning of February 23 made deliveries for Whitford to a drug company on Long Island, but returned to Dalton that evening between 7:30 and 8:00 P.M., and parked the tandem trailer he was using at the Whitford premises. Whitford corroborated this version to the extent that Rohland returned with the truck between 8:00 P.M. and Midnight on February 23. According to Rohland, he went to Jimmy's Lounge in Scranton where he met Kermidas, the owner of the lounge, and Riviello, the maintenance man. At this point the defense versions of what occurred vary markedly. Rohland contends that he was merely hired by Kermidas and Riviello to drive a truck which contained damaged goods, but was instructed "to act as if it were mine" when a sale was attempted and to demand $5.00 for each box on the truck. Rohland testified that on the day of delivery, Monday, February 26, Kermidas and Riviello took him to the truck, which was parked in Scranton on Lackawanna Avenue near the railroad station, and he drove it to Hazleton while Kermidas and Riviello followed in a private car. After all three participated in the unloading, Abelson paid him $8,600.00, which he later turned over to Kermidas and Riviello, and Kermidas gave him $50.00 for driving the truck. He denied ever being on the Cerro premises or knowing that the goods were stolen and insisted that he never saw the truck containing the cartons until the day of delivery. Similarly,

he admitted visiting Mr. Shadie with Farano, but declared that he was there in his capacity as a truck driver and didn't know if the same shipment was involved. Finally, he denied ever using the name John Grace.

The versions of Kermidas and Riviello are the same. According to them, Rohland came to them at Jimmy's Lounge on Friday night, February 23, and offered a commission if they could find a buyer for a truckload of surplus wire which he had obtained in a "good deal." They admitted participating in the meetings with Miller and Abelson, but adamantly insisted that all the negotiations were conducted by Rohland and that they were only present as commission agents. They did not deny receiving $2,400.00 from Abelson, but persisted in their claim that Rohland was in complete control of the goods and that they did not know the shipment had been stolen.

## KERMIDAS

Kermidas concedes in his brief that the evidence was sufficient to show that the goods involved had a value in excess of the $5,000.00 statutory requirement, had been stolen in New York, and had been transported in interstate commerce to Pennsylvania. However, he challenges the sufficiency of the proof that he had knowledge that the goods had been stolen. In resolving this contention insofar as it applies to a motion for judgment of acquittal, the view of the evidence most favorable to the Government must be taken. United States v. Pratt, 429 F.2d 690 (3d Cir. 1970). There are several factors which would justify a jury's determination that Kermidas had the requisite knowledge. First, is the doctrine that possession of recently stolen property warrants a permissible inference of knowledge on the part of the possessor that the property had been stolen, unless the possession thereof is accounted for in a reasonable and satisfactory manner consistent with the circumstances of the possession. Aron v. United States, 382 F.2d 965, 970 (8th Cir. 1967); United States v.

Allegrucci, 258 F.2d 70, 76 (3d Cir. 1958). The question of possession, actual or constructive, is for the jury to determine. United States v. Prujansky, 415 F.2d 1045, 1051–1052 (6th Cir. 1969). Secondly, Kermidas operated a tavern, not a distributorship, so that the approach to him by Rohland, a total stranger, to dispose of approximately $15,000.00 in copper wire and conduits without explanation concerning its source except that it was the product of a "good deal" should certainly arouse suspicion concerning the legitimacy of its acquisition and, further, may have constituted an inadequate explanation to satisfy the inference attaching to possession of recently stolen property. Finally, Rohland's testimony, even if only accepted in part, indicated that Kermidas was more than a mere "commission agent" and, in reality, was an active and knowledgeable participant in the disposition of the goods. All in all there is ample evidence to support a jury's conclusion that on or about February 26, 1968, defendant Kermidas received and sold stolen goods which had been transported in interstate commerce and that he knew these goods had been stolen. Accordingly, the motion for judgment of acquittal will be denied.

■ In the alternative, Kermidas asks the Court to award a new trial because the verdict is against the weight of the evidence. In considering such a motion, the Court must weigh the evidence of both sides, consider the credibility of the witnesses and, if the verdict is against the weight of the evidence, grant a new trial. However, the Court should bear in mind that such a motion should be granted only in exceptional cases in which the evidence preponderates heavily against the verdict. United States v. Pepe, 209 F.Supp. 592, 595 (D.Del. 1962), affirmed 339 F.2d 264. It is addressed to the discretion of the Court, which should be exercised with caution. 2 Wright & Miller, Fed.Practice and Procedure, § 553 (1969). After carefully reviewing the evidence I have no hesitancy in concluding that the evidence did not preponderate heavily against the verdict and, in fact, it was more than sufficient to sustain the verdict of guilty. The motion for a new trial will be denied.

## RIVIELLO

The identical arguments raised by Kermidas were also raised by Riviello and will be rejected for the same reasons.

## ROHLAND

Rohland also seeks a judgment of acquittal or, in the alternative, a new trial and, in his brief, asserts that the Court erred (1) in denying his motion for acquittal at the conclusion of the evidence; (2) in refusing to declare a mistrial because Rohland was cross-examined by Kermidas' counsel concerning a conviction for armed robbery which was then on appeal, and (3) in permitting the testimony of the Government identification witnesses, viz., MacKay, Lichtenberger and Winning, inasmuch as Government counsel had exhibited photographs of Rohland to these witnesses the day before the trial in the absence of counsel.

### 1. *Weight of the Evidence*

■ Defendant Rohland's motion for judgment of acquittal is similarly based on the contention that the evidence does not support a guilty verdict. This contention merits little consideration as the record abounds with evidence of Rohland's guilt on both counts. He was identified as the person who appeared at Cerro with a truck which he loaded with the missing merchandise and departed. According to Kermidas and Riviello, he appeared that very night at Jimmy's Lounge in Scranton where he sought their aid in selling a shipment of surplus wire; he was described by Miller and Abelson as the spokesman for and reputed owner of the goods that were purchased by Abelson and later revealed to have been stolen, and he was the person to whom payment was made when the wire was delivered in Hazleton. Any further comment on the sufficiency of this evidence is unnecessary.

## 2. *Impeachment by Prior Convictions*

 Defendant also alleges, as a basis for ordering a new trial, the refusal of the Court to declare a mistrial because Rohland was cross-examined concerning a prior conviction which was on appeal. At the trial, Rohland testified in his own behalf but did not place his general reputation in issue. On cross-examination, counsel for Kermidas, solely for the purpose of impeaching Rohland's credibility, attempted to ask him if he had been convicted of any felony during the last five years. Over objection, defendant was required to answer that he had previously been convicted in Luzerne County Court for armed robbery. Rohland's counsel then renewed his objection and asked for a mistrial, informing the Court for the first time that, although defendant was convicted, sentence had not yet been imposed inasmuch as the case was "on appeal." [2] The motion for mistrial was denied. However, cautionary instructions were given to the jury, as follows:

"THE COURT: Members of the jury, the question was just asked of this witness and a response made to which an objection has been made and the objection is well taken. Mr. Rohland has never been convicted and sentenced of a felony, of a criminal offense, so I am directing to purge completely from your minds the question that was asked concerning the prior criminal offense and the answer that was given. It is very important that you do that because it has absolutely no bearing, no relevancy in this case. Proceed." N.T. 362

In this Circuit, it has long been established that a defendant may be impeached by showing his prior convictions for felonies or misdemeanors amounting to *crimen falsi.* United States v. Evans, 398 F.2d 159 (3d Cir. 1968); United States v. Remco, 388 F.2d 783 (3d Cir. 1968). Thus inquiry into Rohland's conviction of armed robbery was entirely proper. As to defendant's contention that the inquiry into his prior conviction was error because the decision was on appeal, the majority of courts considering the question have held that the pendency of an appeal does not preclude the use of a prior conviction for impeachment purposes. Newman v. United States, 331 F.2d 968 (8th Cir. 1964); Bloch v. United States, 226 F.2d 185 (9th Cir. 1955), cert. denied 350 U.S. 948, 76 S.Ct. 323, 100 L.Ed. 826 (1956); United States v. Empire Packing Co., 174 F.2d 16 (7th Cir.), cert. denied 337 U.S. 959, 69 S.Ct. 1534, 93 L.Ed. 1758 (1949). [3] *Contra* Campbell v. United States, 85 U.S.App.D.C. 133, 176 F.2d 45 (1949). Thus, neither the use of the prior conviction to impeach the defendant, by itself, nor the fact that the conviction was on appeal would form the basis for awarding defendant Rohland a new trial. Assuming arguendo that the question was improper, it was adequately corrected by the cautionary instructions. In any event, after viewing the record in its entirety, the overwhelming weight of the evidence of Rohland's guilt would reduce any im-

2. The record was not clear on this point but subsequent to the trial, defense counsel submitted certified copies of Luzerne County Court records which indicated that Rohland was convicted by a jury on January 24, 1969, of conspiracy and armed robbery with an accomplice. On January 29, 1969, motions for a new trial and in arrest of judgment were filed and were undisposed of at the time of trial in the instant case. The motions were later denied on April 22, 1970, and defendant was sentenced on April 27, 1970, to a term of imprisonment of not less than 10 years nor more than 20 years on the armed robbery count and to a minimum imprisonment of 1 day and maximum of 2 years on the conspiracy count to run consecutively. On June 9, 1970, an appeal was docketed with the Pennsylvania Superior Court and is presently pending.

3. Comment (e) of Rule 6–09 of the proposed Federal Rules of Evidence provides that the presumption of correctness which ought to attend judicial proceedings supports the position that pendency of an appeal does not preclude its use for impeachment purposes.

propriety in allowing the question to harmless error. *See* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### 3. *Photographic Identification*

■ Finally, defendant Rohland seeks a new trial on the basis that the Court erred in permitting the testimony of Government witnesses MacKay, Lichtenberger and Winning, inasmuch as the United States Attorney had exhibited Rohland's photograph to them the day before the trial in the absence of defendant's counsel. In a two-pronged attack, Rohland contends that under the doctrine of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), and United States v. Zeiler, 427 F.2d 1305 (3d Cir. 1970), he was entitled to counsel at the time his photograph was identified by the Government witnesses, and also that the identification procedure itself was so unnecessarily suggestive as to violate due process. In *Zeiler*, the Third Circuit Court of Appeals extended *Wade's* requirement that an accused be afforded counsel at certain "critical stages" in the criminal process to pretrial photo identifications and held that (1) any evidentiary use of the improper pretrial photographic identification was constitutional error and was to be excluded *per se*, and (2) an in-court identification of the accused would be admissible only if the prosecutor could establish by "clear and convincing evidence" that the witnesses were not influenced by the prior photographic identification. United States v. Zeiler, *supra* at 1307–1308.

Within two weeks after the crime and before Rohland had been taken into custody, the above-named witnesses identified Rohland from a group of photos shown to them by FBI agents. Subsequently, on the day before the trial, the same witnesses were called to the United States Attorney's office and were again requested to make an identification from a group of nine photographs, two of which were of the defendant. Rohland's counsel was not present at either identification. At the trial, the Government elicited testimony from these witnesses that they had previously identified Rohland from photographs shown to them the day before. The Government also elicited an in-court identification from these witnesses, who were then cross-examined by defendant's counsel concerning the procedure employed during the identification.

From what has been said, it is readily apparent that if *Zeiler* is applicable to these facts, the evidentiary use of Rohland's identification the day before the trial clearly violated *Zeiler's* mandate requiring defense counsel's presence at this "critical stage" of the criminal process. In addition, the in-court identification of Rohland was also improper unless the prosecution had met its burden of establishing by clear and convincing evidence that the in-court identification had an independent origin. However, the Government contends that *Zeiler* is inapplicable here because the showing of the photographs and the trial in this case took place between March 16 and March 19, 1970, some two and one-half months before *Zeiler* was decided. Instead, the prosecution urges that the applicable law at that time was that a pretrial showing of photographs in the absence of defense counsel did not violate an accused's right to counsel under the Sixth Amendment. *See* United States v. Conway, 415 F.2d 158 (3d Cir. 1969). Thus, the Government argues, to apply *Zeiler* to the instant case would require an unwarranted retroactive application of the doctrine to the facts of this case. *See* United States v. Sanders, 322 F. Supp. 947 (E.D.Pa.1971). I agree.

■ Recent pronouncements of the Supreme Court dealing with the retroactive effect of rules on criminal procedure have approached the problem by analyzing the following factors: (1) the purpose to be served by the new standards, (2) the extent of the reliance by

law enforcement authorities on the old standards, and (3) the effect on the administration of justice of a retroactive application of the new standards. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).[4] Foremost among these factors is the purpose to be served by the new constitutional rule. Desist v. United States, *supra* at 249, 89 S.Ct. 1030. If the rule's primary purpose is to cure a defect in the truth-determining process at trial and thus raises a question about the accuracy of past guilty verdicts, the new rule has been given complete retroactive effect. Williams v. United States, *supra* at 653, 91 S.Ct. 1148. However, if the purpose of the rule in question did not clearly affect the truth-finding process, decisions which have given retroactive effect to a prior decision have relied heavily on factors 2 and 3. See DeStefano v. Woods, *supra* at 633–634, 88 S.Ct. 2093; Stovall v. Denno, *supra* at 297–301, 87 S.Ct. 1967.

For example, in Stovall v. Denno, *supra*, the case dealing with the retroactivity of *Wade* and *Gilbert*, the Supreme Court found that the purpose of those rules did not clearly favor either retroactivity or prospectivity. However, because of the unusual degree of reliance by law enforcement authorities on the prior rule and the consequent burden on the administration of justice, the Court in *Stovall* felt compelled to conclude in favor of a prospective applica-

tion. Stovall v. Denno, *supra* at 299, 87 S.Ct. 1967. The opinion pointed out that prior to *Wade*, the overwhelming majority of courts had held that the Constitution did not require the presence of counsel at such pretrial confrontations. In addition, law enforcement authorities had relied heavily on this near unanimity of opinion in conducting pretrial identifications in the absence of counsel. Thus, the Court concluded, "that retroactive application of *Wade* and *Gilbert* 'would seriously disrupt the administration of our criminal laws.'" Stovall v. Denno, *supra* at 300, 87 S.Ct. at 1971.

The same considerations apply with equal force in this case. However, strongly it is urged that *Zeiler* was foreshadowed by *Wade*, no federal court decision prior to *Zeiler* had held that *Wade's* mandate extended to photographic identification.[5] In fact, just nine months prior to the decision in *Zeiler*, the Third Circuit Court of Appeals held that counsel was not required at a preindictment photographic identification. United States v. Conway, *supra*.

In effect, I am unable to see any meaningful difference between the purpose or effect of the rule requiring counsel at a pretrial lineup announced in *Wade* and *Gilbert* and the rule requiring counsel at a photo identification announced in *Zeiler*. I conclude, therefore, that the rule of retroactivity stated in *Stovall* with respect to *Wade* and *Gilbert* applies in full measure to *Zeiler*. Accordingly, I hold that *Zeiler* applies only to those pretrial photographic identifications con-

4. *See also* DeStefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968); Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L. Ed.2d 601 (1965).

5. Courts which have considered and rejected the claim of right to counsel at pretrial photographic identifications include: United States v. Smith, 423 F.2d 1290

(9th Cir. 1970); United States v. Ballard, 423 F.2d 127 (5th Cir. 1970); United States v. Collins, 416 F.2d 696 (4th Cir. 1969); cert. denied 396 U.S. 1025, 90 S.Ct. 601, 24 L.Ed.2d 519 (1970); United States v. Conway, 415 F.2d 158 (3d Cir. 1969); Rech v. United States, 410 F.2d 1131 (10th Cir. 1969); United States v. Bennett, 409 F.2d 888 (2d Cir.); cert. denied sub nom, Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 24 L.Ed.2d 101 (1969); United States v. Robinson, 406 F.2d 64 (7th Cir. 1969).

ducted after June 5, 1970.[6] Since the identification of Rohland took place some two and one-half months earlier, he was not entitled to have counsel present.

■ As to defendant's independent contention that the identification procedure itself violated due process, a new trial must be ordered if the procedure, taken as a whole, was "so unnecessarily suggestive and conducive to irreparable mistaken identification" as to violate due process. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). In applying this test, each case must be considered on its own facts. Simmons v. United States, *supra* at 384, 88 S.Ct. 967, 971.

The record shows that the witnesses were called to the United States Attorney's office the morning before the trial and were seated in a semi-circle around a table.[7] All the witnesses remained in the room while each witness separately identified Rohland. Although such a procedure of group identification is said to be fraught with dangers of suggestion, *see* United States v. Wade, *supra* at 234, 87 S.Ct. 1926 there is no indication in the record that the Assistant United States Attorney emphasized Rohland's picture in any way or did anything during the identification that could be construed as suggestive. On the contrary, as each witness was handed the group of photographs, they were asked merely whether there was anyone in the group whom they could identify.[8] Each wit-

ness then unhesitatingly identified defendant Rohland as the man who loaded the shipment of wire at the Cerro Wire Company on the night in question. No witness had any difficulty in picking out his picture since they all had an excellent chance to closely observe Rohland at the Cerro Wire Company for varying intervals between 3:00 P.M. and 10:00 P.M. that day. Moreover, their attention was drawn to Rohland because he was extremely slow in loading the truck, had to stop repeatedly to rest and refused continued requests to employ a helper.

At the trial, all of the witnesses except one stated affirmatively that they could have identified Rohland without having seen his photo the day before and there is nothing in their testimony which even remotely suggests that their in-court identification was influenced in any way by seeing Rohland's picture the day before. Therefore, on this record it cannot be said that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Simmons v. United States, *supra* at 384, 88 S.Ct. 967; United States v. Conway, *supra* at 164.

I have given full consideration to Rohland's other allegations of error and have concluded that they are equally without merit. His motion for judgment of acquittal or, in the alternative, a new trial will be denied.

---

6. This is the date *Zeiler* was decided. For a similar result *see* United States v. Sanders, *supra* at 954.

7. The obvious reason for summoning the witnesses at this time was to attempt to buttress their recollection immediately prior to testifying. Although such a practice is not to be condoned, in light of all the other circumstances of this case, the identification procedure, taken as a whole, did not deprive Rohland of due process of law. *See* United States v. Williams

436 F.2d 1166 (9th Cir. 1970); Davis v. United States, 425 F.2d 673 (9th Cir. 1970).

8. Although there were nine separate photographs displayed to each witness, seven were double views (front and side); two were single image exposures of which one was Rohland. Thus, of the sixteen images shown, three were of Rohland. None of the suspects in the photographs were grossly dissimilar in age, height, race or any other distinguishing characteristic.